**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **WILLIAM HARRIS, Individually and on Behalf of All Others Similarly Situated,** | |
| Plaintiffs, | Case No. 07 C 3650 |
| v. | Hon. Harry D. Leinenweber |
| **THE DIRECTV GROUP, INC. and DIRECTV, INC.,** | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff William Harris (hereinafter, "Harris") brings this putative class action suit against Defendants, The DirecTV Group, Inc. and DirecTV, Inc. (hereinafter, "Defendants" or "DirecTV"), alleging that Defendants violated the Fair and Accurate Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, by printing more than the last five digits of the card number and/or the expiration date on receipts provided to debit and credit cardholders. Harris alleges that on May 6, 2007, he received from DirecTV's online store a computer-generated receipt that displayed his credit card expiration date.

Before the Court is Defendants' Motion to Compel Arbitration and Plaintiff's Motion to Strike Altered Exhibit. For the following reasons, both motions are **granted.**

I. **FACTUAL BACKGROUND**

DirecTV's relationship with its customers is governed by the Customer Agreement, a written contract that governs the rights and obligations of DirecTV and its customers. Miller Aff. ¶ 3. The Customer Agreement (the "Agreement") has been amended several times, and each time it is amended, existing customers receive a copy of the new Agreement in the mail with their next monthly billing statements. Each new Agreement replaces customers' old Agreement. *Id.* ¶ 5. Moreover, "[n]otices to you will be deemed given when personally delivered, addressed to you at your last known address and deposited in the U.S. Mail (which may include inclusion in your billing statement), or sent . . . to the e-mail address you provided us. . . ." April 24, 2007 Customer Agreement, Section 10(a).

Harris first signed up for DirecTV's services in December 1999. At that time, the Agreement in effect was the October 1999 Customer Agreement. *Id.* ¶ 6. Since December 1999, the Customer Agreement was revised several times: September 2001, October 2004, December 2004, May 1, 2006, and April 24, 2007. Supp. Miller Aff. ¶ 2. On May 6, 2007, Harris added High Definition ("HD") programming to his service via DirecTV's website. The Agreement in effect at that time was the April 24, 2007 Customer Agreement, which DirecTV states it mailed to Harris with his May 22, 2007 monthly billing statement. *Id.* ¶ 3. The predecessor to the April

2007 Agreement, the May 1, 2006 Agreement, would have been mailed to Harris with his monthly billing statement on or about May 22, 2006. *Id.* ¶ 4.

As a threshold matter, the parties dispute which version of the Customer Agreement is applicable to Harris: Harris argues that the April 24, 2007 Agreement should not apply to him because it was not sent to him until May 22, 2007, after he signed up for HD service on May 6. *See id.* ¶ 3. Pursuant to Section 10(a) of the Agreement, the May 1, 2006 Agreement is probably the version applicable to Harris. This makes no difference, however, because the substance of the arbitration provision (Section 9) and the disclaimer on the first panel are identical. *Compare* Ex. C to Defs.' Response to Pl.'s Mot. to Strike (paper copy of April 24, 2007 Agreement) with Ex. B to Defs.' Reply in Support of Mot. to Compel Arbitration (.pdf copy of May 1, 2006 Agreement).

The April 2007 Agreement is printed in an 8-point font on a ten-paneled fold-up pamphlet containing approximately 750 words per panel. (Presumably the May 1, 2006 Agreement appears in a similar format in paper form, although Defendants provided the Court with only an enlarged .pdf version.) Near the top of the first panel in bold capital letters is the following:

> **THIS DOCUMENT DESCRIBES THE TERMS AND CONDITIONS OF YOUR RECEIPT AND PAYMENT OF DIRECTV SERVICE AND IS SUBJECT TO ARBITRATION (SECTION 9). IF YOU DO NOT ACCEPT THESE TERMS, PLEASE NOTIFY US IMMEDIATELY AND WE**

> **WILL CANCEL YOUR SERVICE. IF YOU INSTEAD DECIDE TO RECEIVE OUR SERVICE, IT WILL MEAN THAT YOU ACCEPT THESE TERMS AND THEY WILL BE LEGALLY BINDING.**

This text appears in the same font size as the text in the body of the pamphlet. Section 9 appears on panels 9 and 10 of the pamphlet.

DirecTV has moved to compel arbitration pursuant to Section 9, which provides that any legal or equitable claims will be resolved first through informal means and then, if informal resolution is unsuccessful, "any Claim either of us asserts will be resolved only by binding arbitration. . . . **ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JURY TRIAL.**" May 2006 Agreement, Section 9(b). Section 9(b) further provides that arbitration will be conducted under JAMS Rules then in effect and, in the event of a conflict between JAMS Rules and the Agreement, the Agreement governs. Remedies available in arbitration are not limited: "You may, in arbitration, seek any and all remedies otherwise available to you pursuant to your state's law." *Id.* With respect to the costs of arbitration, Section 9(b) provides:

> If you decide to initiate arbitration, you agree to tell us in writing the amount that you would pay to file a lawsuit against us in the appropriate court of law in your state. Unless we agree to pay your fee for you, you only need to pay an arbitration initiation fee equal to such court filing fee, not to exceed $125; we agree to pay any additional fee or deposit required by JAMS to initiate your arbitration. We also agree to pay the costs

> of the arbitration proceeding. Other fees,
> such as attorney's fees and expenses of travel
> to the arbitration will be paid in accordance
> with JAMS Rules. The arbitration will be held
> at a location in your hometown area unless you
> and we both agree to another location or
> telephonic arbitration.

Section 9(c)(ii) of the Agreement contains a class action waiver: "Neither you nor we shall be entitled to join or consolidate claims in arbitration by or against other individuals or entities, or arbitrate any claim as a representative member of a class or in a private attorney general capacity. . . . If, however, the law of your state would find this agreement to dispense with class action arbitration procedures unenforceable, then this entire Section 9 is unenforceable."

## II. DISCUSSION

### A. Plaintiff's Motion to Strike Exhibit

Harris argues that the Court should strike the .pdf version of the April 2007 Agreement that Defendants attached to their motion to compel arbitration [18-6, 18-8] because it does not accurately represent the size of the font and format of the agreement as actually provided to him. Since Defendants have provided the Court with a paper copy of the April 24, 2007 Customer Agreement, the Court grants Plaintiff's Motion to Strike the .pdf version and will substitute the paper version in its place.

**B. Defendant's Motion to Compel Arbitration**

DirecTV argues that a valid arbitration agreement exists between Harris and DirecTV and that the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 2, requires its enforcement. Defs.' Mem. at 4-15. Plaintiff argues that the arbitration clause is unenforceable because it is both procedurally and substantively unconscionable. Pls.' Opp. at 6-17. Under Illinois law, "[a] finding of unconscionability may be based on either procedural or substantive unconscionability, or a combination of both." *Kinkel v. Cingular Wireless LLC*, 857 N.E.2d 250, 263 (Ill. 2006).

*1. Procedural Unconscionability*

"Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it, and also takes into account a lack of bargaining power." *Razor v. Hyundai Motor America*, 854 N.E.2d 607, 622 (Ill. 2006). Courts must consider all the circumstances surrounding a transaction, including "the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print." *Kinkel*, 857 N.E.2d at 264.

Plaintiff relies on *Bess v. DirecTV, Inc.*, ___ N.E.2d ___, 2007 Ill. App. LEXIS 757 (Ill. App. Ct. Jul. 10, 2007), in which the court held that the arbitration provision in DirecTV's October

1999 Customer Agreement was procedurally unconscionable under the circumstances. Bess contracted for DirecTV's satellite television service in November 1999, and DirecTV activated her service and mailed her a copy of the October 1999 Customer Agreement then in effect along with her first billing statement. *Id.* at *2.

The October 1999 Agreement provided the same informal and formal resolution clauses as the May 2006 Agreement, except that it did not contain the sentence "You may, in arbitration, seek any and all remedies otherwise available to you pursuant to your state's law," and it limited the amount DirecTV would pay for arbitration "to a maximum of one-half day (four hours) of hearings." October 1999 Agreement, Section 8(b). Significantly, the bold capital text at the top of the first panel of the October 1999 Agreement did not include the phrase, "**AND IS SUBJECT TO ARBITRATION (SECTION 9),**" as does the May 2006 Agreement. The October 1999 Agreement also provided that it could be replaced by updated agreements and that "the customer would accept the terms of any subsequent agreements in the same manner that she agreed to the terms of the initial Customer Agreement - by continuing to accept DirecTV service." *Bess*, 2007 Ill. App. LEXIS 757, at *5. Bess did not cancel her service after receiving the October 1999 Agreement. Nor did Bess cancel her service after receiving a subsequent September 2001 Agreement, which contained the same arbitration provision as the October 1999 Agreement. *Id.*

Bess sued DirecTV over a $5.00 administrative late fee it assessed her pursuant to a provision in the Customer Agreement, and DirecTV moved to compel arbitration. The court held that the arbitration provision was procedurally unconscionable because: (1) the parties were in "disparate bargaining positions0"; (2) "it was a contract of adhesion in that Bess had no hand in drafting it"; and (3) it "was printed in single-spaced lines of very small font on the last two panels of a multipaneled pamphlet, which DirecTV mailed to Bess along with her monthly bill after Bess had already purchased satellite television equipment and contracted to receive DirecTV service. Accordingly, Bess had not seen and could not have seen the arbitration provision before entering into the contract with DirecTV." *Id.* at *20-21. Bess was deprived of a "meaningful choice" in deciding whether to accept the provision because she had to buy the equipment before she saw the Agreement, and if she had decided to cancel service afterwards, DirecTV would have charged her a deactivation fee and did not agree to reimburse her for the cost of the equipment. *Id.*

Harris and DirecTV are in disparate bargaining positions, and DirecTV's Agreement is still a contract of adhesion. However, the circumstances here are sufficiently different from those in *Bess* to render the arbitration provision not procedurally unconscionable. In *Bess*, it was undisputed that the plaintiff did not see the agreement and that she "substantially change[d] her economic

position" before signing up for services. *Bess*, 2007 Ill. App. LEXIS 757, at *18-20. There is no allegation here that Harris substantially changed his economic position by signing up for HD services, and since he was already a DirecTV customer at the time, presumably he had in his possession the May 1, 2006 Customer Agreement containing the arbitration provision in dispute. *See* Supp. Miller Aff. ¶ 4; *compare Kinkel*, 857 N.E.2d at 266 (finding some procedural unconscionability but not enough to render provision unenforceable where plaintiff signed and initialed agreement stating that she had read terms and conditions and "[t]here is no dispute that the terms and conditions were in her possession and she either read them or could have read them if she had chosen to do so."), *with Razor*, 854 N.E.2d at 623 (finding procedural unconscionability where plaintiff car buyer had no opportunity to see the warranty containing the disclaimer of consequential damages before taking delivery of the car).

*Bess* is also distinguishable because this Agreement states in bold capital letters on the first panel, "**THIS DOCUMENT DESCRIBES THE TERMS AND CONDITIONS OF YOUR RECEIPT AND PAYMENT OF DIRECTV SERVICE AND IS SUBJECT TO ARBITRATION (SECTION 9),**" but the October 1999 Agreement in *Bess* did not specifically point out the arbitration clause on the first panel. *Compare* Ex. B to Defs.' Reply (May 1, 2006 Agreement) *with* Ex. A to Defs.' Mem. (October

1999 Agreement).  Thus, the arbitration provision was made more conspicuous here.

## 2. *Substantive Unconscionability*

"Substantive unconscionability refers to those terms which are inordinately one-sided in one party's favor." *Razor*, 854 N.E.2d at 622.  "Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Kinkel*, 857 N.E.2d at 267.

Harris argues that the class action waiver in Section 9(c)(ii) of the Agreement is substantively unconscionable.  He relies on *Kinkel*, which held that a class action waiver in a Cingular Wireless service agreement was substantively unconscionable.  The plaintiff sued Cingular over a $150 early-termination fee that Cingular charged him pursuant to his service agreement.  *Id.* at 256.  The *Kinkel* court focused on whether an individual plaintiff could bring a claim in a cost-effective manner and stated that "[t]he nature of the underlying claim is . . . relevant to th[e] inquiry."  *Id.* at 267.  That is, where the claim is not likely to be litigated successfully without a lawyer, as in *Kinkel*, "we must consider that the cost to plaintiff of attempting to vindicate her $150 claim, in the absence of the ability to bring a class claim, would be $125 plus her attorney fees.  As a result, if she were to

prevail on the merits of her claim and be awarded $150 in damages, it is an absolute certainty that she would not be made whole." *Id.* at 268. The court also noted that class action waivers were more likely to be found substantively unconscionable "when the contract containing the waiver is burdened by other unfair features, rendering it substantively unconscionable when taken as a whole." *Id.* at 271.

The court held that Cingular's class action waiver was unconscionable under circumstances including:

> a contract of adhesion that requires the customer to arbitrate all claims, but does not reveal the cost of arbitration, and contains a liquidated damages clause that allegedly operates as an illegal penalty. These provisions operate together to create a situation where the cost of vindicating the claim is so high that the plaintiff's only reasonable, cost-effective means of obtaining a complete remedy is as either the representative or a member of a class.

*Id.* at 274-75. Moreover, other provisions of the arbitration clause "burden[ed] an individual customer's ability to vindicate this claim," including a strict confidentiality clause that would prevent information-sharing between a claimant and other potential claimants. *Id.* at 275. The court emphasized that "[t]he unconscionability of class action waivers must be determined on a case-by-case basis, considering the totality of the circumstances." *Id.* at 278.

The Court finds that under the circumstances present here, DirecTV's class action waiver is not substantively unconscionable. Here, Section 9(b) of the Agreement discloses the cost of arbitration: Harris would "only need to pay an arbitration initiation fee equal to [the court filing fee for filing a lawsuit in the appropriate court of his state], not to exceed $125." DirecTV "agree[s] to pay any additional fee or deposit required by JAMS to initiate your arbitration. [DirecTV] also agree[s] to pay the costs of the arbitration proceeding." May 2006 Agreement, Section 9(b). If Harris were to prevail on his claim that Defendants willfully violated FACTA, he could receive actual damages or statutory damages of "not less than $100 and not more than $1,000," plus punitive damages, costs, and reasonable attorney's fees. 15 U.S.C. § 1681n(a). Although the amount of statutory damages available under FACTA is still small (less than $1,000), unlike in *Kinkel*, it is not "an absolute certainty that [plaintiff] would not be made whole" because if Harris prevailed, he could obtain more than the $125 cost of arbitration *plus* attorney's fees. Also, weighing against a finding of substantive unconscionability is the nature of the injury alleged: the failure to truncate credit and debit card numbers and expiration dates is not "'a scheme to deliberately cheat large numbers of consumers out of individually small sums of money'" or other scheme to defraud. *Kinkel*, 857 N.E.2d at 272 (quoting *Discover Bank v. Superior Court*,

- 12 -

113 P.3d 1100, 1110 (Cal. 2005)). Finally, DirecTV's arbitration provision does not contain a confidentiality clause or a limit on the remedies available in arbitration, as did Cingular's provision in *Kinkel*. *See id.* at 256 (Cingular's arbitration clause provided that arbitrators had no authority to "award punitive damages or any other damages not measured by the prevailing party's actual damages").

The Court does not find persuasive Harris's other arguments regarding substantive unconscionability.

### III. CONCLUSION

For the reasons stated herein, the Court:

1. Grants Plaintiff's Motion to Strike the .pdf version and will substitute the paper version in its place; and

2. Section 9 of DirecTV's May 1, 2006 and April 24, 2007 Customer Agreements is not unconscionable. Since the arbitration provision is valid, it must be enforced pursuant to the FAA. DirecTV's Motion to Compel Arbitration is granted, and the Court stays this action pending arbitration.

**IT IS SO ORDERED.**

     Harry D. Leinenweber, Judge
     United States District Court

DATE: February 5, 2008